UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NEW HOPE HOSPITALITY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-2296-B |
| | § | |
| EH NATIONAL BANK, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff New Hope Hospitality, LLC's motion for summary judgment on all of its claims (Doc. 15, Pl.'s Mot. Summ. J.) and Defendant EH National Bank's motion for summary judgment on its counterclaim for declaratory relief. Doc. 33, Def. Mot. Summ. J. For the following reasons, the Court **GRANTS** New Hope's motion for summary judgment on all of its claims, and **DENIES** EH's motion for summary judgment on its counterclaim for declaratory relief.

## I.

## BACKGROUND

A.  *Introduction*

This case is primarily a breach of contract dispute arising out of a confirmed chapter 11 bankruptcy reorganization plan. The debtor, Plaintiff New Hope Hospitality, LLC (New Hope), is a Texas limited liability company which owns and operates a Hampton Inn & Suites in Corsicana, Texas. The creditor, Defendant EH National Bank (EH), is a California-based national banking association that made loans to New Hope in September 2008 and August 2009. New Hope filed for chapter 11 bankruptcy in March 2012, and the Bankruptcy Court for the Northern District of Texas

confirmed the chapter 11 reorganization plan in March 2013. In January 2015, New Hope arranged for financing to pay off its creditors under the plan, including EH, and requested a pay-off amount from EH. New Hope now alleges that EH miscalculated that pay-off amount, causing New Hope to overpay by $407,868.56.

B.      *Factual Summary*[1]

On September 17, 2008, EH loaned New Hope $5,000,000.00 under a written promissory note. Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶ 4; Doc. 35, App. Supp. Def.'s Mot. Summ. J. 9–13. Subsequently, EH loaned New Hope an additional $791,600.00 on August 31, 2009. Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶ 5; Doc. 35, App. Supp. Def.'s Mot. Summ. J. 14–19. New Hope secured both loans with its interest in the Hampton Inn & Suites in Corsicana, Texas. Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶ 6.

On March 30, 2012, New Hope filed a voluntary chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of Texas. Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 1. At the time of this filing, the total outstanding on both loans was $5,770,054.96. Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶ 9. On December 11, 2012, New Hope proposed its first Plan of Reorganization pursuant to chapter 11 of the U.S. Bankruptcy Code. Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 2. Under this first proposed plan, EH held a Class 5 "allowed secured claim" for $4,250,000.00—the estimated value of the collateral—and a Class 6 "general unsecured claim" for the deficiency—the difference between the total debt and the value of the collateral. *Id.* at 23–24.

---

[1] The following factual summary is drawn from the parties' initial pleadings and the summary judgment record before the Court. Any contested fact is noted as such.

Believing itself to be undersecured, EH timely filed an election to have its claims treated in accordance with 11 U.S.C. § 1111(b) on January 4, 2013. Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. 3; Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 4. The effect of this election, discussed below, on the early pay-off under the plan forms the crux of the present disagreement between the parties. Following the § 1111(b) election, New Hope filed a First Amended Disclosure Statement and First Amended Plan of Reorganization on January 11, 2013, which included additional language regarding the significance of EH's election to have its claim treated under § 1111(b). Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 5.

On January 25, 2013, New Hope filed a Motion for Valuation in the bankruptcy court, requesting to have the bankruptcy court assign a value to the collateral underlying EH's claims. Doc. 35, App. Supp. Def.'s Mot. Summ. J., Ex. 1-C, at 1.  Following an evidentiary hearing on February 27, 2013, the bankruptcy court valued the property at $5,500,000.00. Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. 3; Doc. 35, App. Supp. Def.'s Mot. Summ. J., Ex. 1-C, at 2. On March 13, 2013, New Hope filed a Second Modification to the First Amended Plan. Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 7.[2] The Second Modification "addresse[d] the changes required in the Plan as a result of the Court's ruling on the valuation of the Debtor's primary asset." *Id.*

The Second Modification provided for ten years of monthly payments to EH with a balloon payment due at the end. *Id.* The monthly payments of $27,275.49 were based on a thirty year

---

[2]New Hope had previously filed a First Modification to the First Amended Plan on February 5, 2013 (Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 7), however, the First Modification, and the changes to the plan therein, is not relevant to the parties' current dispute.

amortization of EH's allowed secured claim of $5,168,829.55[3] at 4.85%. *Id.* The balloon payment due after ten year's worth of payments was $4,202,214.35. *Id.*

The plan, as modified, was confirmed by the bankruptcy court on March 29, 2013 (Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 8), and the bankruptcy case was closed on September 16, 2013. Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 9.

In January 2015, after making twenty monthly payments of $27,275.49 to EH as required by the plan, New Hope obtained outside financing to pay off its creditors, including EH. Doc. 29, Pl.'s Corr. Br. Supp. Mot. Summ. J. ¶ 11; Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶ 20. As of January 2015, New Hope had made payments to EH totaling $545,509.80.[4] Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶ 20. New Hope proposed a pay-off amount of $5,224,545.16[5] to satisfy the remaining portion of EH's claim and remove the lien on the property, however, EH refused to accept this amount in satisfaction of New Hope's obligations under the plan. Doc. 1-3, Pl.'s Pet. ¶ 2.12; Doc. 4, Def.'s Answer ¶ 16; Doc. 29, Pl.'s Corr. Br. Supp. Mot. Summ. J. ¶ 13. Instead, EH calculated its own pay-off amount of $5,632,413.72,[6] which New Hope ultimately paid but contends included an overpayment of $407,868.56. Doc. 1-3, Pl.'s Pet. ¶ 2.12; Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶ 13.

---

[3] The amount of EH's "allowed secured claim" is calculated by subtracting the outstanding ad valorem tax liens on the property as noted in the Second Modification ($331,170.45) from the bankruptcy court's valuation of the property ($5,500,000.00). $5,500,000.00 – $331,170.45 = $5,168,829.55.

[4] $27,275.49 monthly payments x 20 months = $545,509.80.

[5] How New Hope arrived at this figure is discussed below.

[6] EH's calculations are also addressed in detail below.

*C. Procedural History*

    1.    <u>Initial Pleadings</u>

    New Hope filed its original claim in Texas state court on May 5, 2015, for(1) breach of contract; (2) money had and received; and (3) declaratory relief. Doc. 1-3, Pl.'s Pet. New Hope alleges that the reorganization plan constituted a valid contract and that EH, by demanding and accepting more than it was entitled to under the plan, breached the contract. Doc. 1-3, Pl.'s Pet. ¶¶ 3.01–3.06. New Hope bases its money had and received claim on EH's refusal to return the $407,868.56 that it believes was overpaid to EH and rightfully belongs to New Hope. *Id.* ¶¶ 4.01–4.03. Finally, New Hope seeks to have the Court declare the rights of the parties under the plan, specifically the amount due EH under the plan. *Id.* ¶¶ 5.01–5.05.

    EH timely filed its notice of removal to this Court on July 10, 2015, based on diversity jurisdiction in accordance with 28 U.S.C. §§ 1332(a)(1) and 1441(b). Doc. 1, Notice of Removal. EH subsequently answered in federal court, denying all of New Hope's claims, and filed a counterclaim for declaratory relief on July 10, 2015. Doc. 4, Def.'s Answer ¶ 38.

    2.    <u>Motions for Summary Judgment</u>

    *i.    New Hope's motion for summary judgment*

    On January 6, 2016, New Hope filed a motion for summary judgment on all of its claims. Doc. 15, Pl.'s Mot. Summ. J. Attached to the Motion were its Brief in Support and the following exhibits: (1) the affidavit of Tarlochan Kataria, Manager of New Hope Hospitality, LLC; (2) the First Amended Plan of Reorganization dated January 11, 2013; (3) a document summarizing New Hope's pay-off calculations; (4) a loan closing statement showing the amount paid to EH National Bank;

and (5) the affidavit of Joyce W. Lindauer regarding attorney's fees. Doc. 16, Pl.'s Br. Supp. Mot. Summ. J.[7]

EH responded on February 10, 2016. Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. Attached were its Brief in Support and the following exhibits: (1) the declaration of Darren Thrower, Vice President of EH National Bank[8]; (2) the promissory note for the September 17, 2008 loan; and (3) the promissory note for the August 31, 2009 loan. Doc. 20, Br. Supp. Def.'s Resp. to Pl.'s Mot. Summ. J.[9]

New Hope filed its Reply on March 8, 2016. Doc. 23, Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. Summ. J. Included with New Hope's Reply were the following exhibits: (1) an additional affidavit of Joyce W. Lindauer; (2) the First Amended Plan of Reorganization dated January 11, 2013; (3) the First Amended Disclosure Statement dated January 11, 2013; (4) the First Modification to the First Amended Plan of Reorganization; (5) the Second Modification to the First Amended Plan of

---

[7]With leave of Court, New Hope's Brief in Support of its Motion for Summary Judgment and the attached exhibits (Doc. 16) were later re-submitted as separate documents. *See* Doc. 29, Corr. Br. Supp. Pl.'s Mot. Summ. J.; Doc. 30, App. Supp. Corr. Br. Supp. Pl.'s Mot. Summ. J. For clarity, the Court's reference in this opinion is always to the corrected documents, Docs. 29 and 30.

[8]In its Reply, New Hope lodges several objections to Thrower's Declaration. However, because the Court does not rely on this evidence in making its determination, all of the objections are hereby overruled as moot.

[9]With leave of Court, EH's Brief in Support of its Response to New Hope's Motion for Summary Judgment and the attached exhibits (Doc. 20) were later re-submitted as separate documents. *See* Doc. 39, Corr. Br. Supp. Def.'s Resp. to Pl.'s Mot. Summ. J.; Doc. 40, App. Supp. Corr. Br. Supp. Def.'s Resp. to Pl.'s Mot. Summ. J. For clarity, the Court's reference in this opinion is always to the corrected documents, Docs. 39 and 40.

Reorganization; and (6) the bankruptcy court's order confirming the plan as modified. *Id.*[10] Thus, New Hope's Motion for Summary Judgment is now ripe for review.

    ii.  *EH's motion for summary judgment*

   EH filed its motion for summary judgment on its counterclaim for declaratory relief on May 6, 2016. Doc. 33, Def.'s Mot. Summ. J.[11] Attached were its Brief in Support of the motion (Doc. 34, Br. Supp. Def.'s Mot. Summ. J.), and the following supplemental documents: (1) an additional affidavit of Darren Thrower, Vice President of EH National Bank; (2) the promissory note for the September 17, 2008 loan; (3) the promissory note for the August 31, 2009 loan; and (4) the bankruptcy court's order on the Motion for Valuation. Doc. 35, Suppl. Docs. Supp. Def.'s Br.

   New Hope filed its Response to EH's motion for summary judgment on May 27, 2016. Doc. 43, Pl.'s Resp. to Def.'s Mot. Summ. J. The Response was supported by a Brief (Doc. 44, Br. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J.) and an Appendix (Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J.) containing the following exhibits: (1) the original bankruptcy petition; (2) the first Plan of Reorganization dated December 11, 2012; (3) the First Amended Plan of Reorganization dated January 11, 2013; (4) the 11 U.S.C. § 1111(b) election; (5) the First Amended Disclosure Statement dated January 11, 2013; (6) the First Modification to the First Amended Plan of Reorganization;

---

[10]With leave of Court, New Hope's Reply and the attached exhibits (Doc. 23) were later re-submitted as separate documents. *See* Doc. 31, Pl.'s Corr. Reply to Def.'s Resp. to Pl.'s Mot. Summ. J.; Doc. 32, Pl.'s App. Supp. Corr. Reply to Def.'s Resp. to Pl.'s Mot. Summ. J. For clarity, the Court's reference in this opinion is always to the corrected documents, Docs. 31 and 32.

[11]Although EH's motion is titled a "Motion for Partial Summary Judgment," neither the Motion nor the attached Brief in Support specifically identify which, if any, of New Hope's claims EH is moving on. Rather, the Motion and Brief both generally argue in favor of EH's interpretation of the plan and pay-off calculation, and the Motion concludes with a "pray[er] for declaratory relief." Doc. 33, Def.'s Mot. Summ. J. ¶ 19. Therefore, the Court construes EH's motion as a motion for summary judgment on its counterclaim for declaratory relief.

(7) the Second Modification to the First Amended Plan of Reorganization; (8) the bankruptcy court's order confirming the plan as modified; (9) the bankruptcy court order closing the bankruptcy case; (10) a document summarizing New Hope's pay-off calculations; (11) a loan closing statement showing the amount paid to EH National Bank; (12) EH's objection to the reopening of the bankruptcy case; (13) the Notice of Removal; and (14) New Hope's Original Petition. *Id.*

EH replied on June 10, 2016. Doc. 47, Def.'s Reply to Pl.'s Resp. to Def.'s Mot. Summ. J. Therefore, EH's motion for summary judgment on its counterclaim is now ripe for review.

## II.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. SmithKline & French, Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). To satisfy its burden, the movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam).

- 8 -

If the movant has met its burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Id.* A non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claims. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The evidence the non-movant provides must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This burden is not satisfied "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted). The evidence must be such that a jury could reasonably return a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 249. The Court will not make credibility determinations, weigh the evidence, or draw inferences, but instead confines its inquiry to the facts material under the governing legal standards. *Id.* at 255. If the non-movant is unable to make such a showing, the Court must grant summary judgment for the movant. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

New Hope moves for summary judgment on all of its claims. EH moves for summary judgment on its counterclaim for declaratory relief. The Court will address each of the parties' claims below.

A.      *New Hope's Breach of Contract Claim*

To succeed on its breach of contract claim, New Hope must demonstrate that there is no genuine issue of material fact as to any of the elements of a breach of contract. Under Texas law, to prevail on a breach of contract claim, New Hope must establish that: (1) a valid contract existed; (2) New Hope performed or tendered performance under that contract; (3) EH breached the contract; and (4) New Hope was damaged as a result of that breach. *See Chesapeake Operating, Inc. v. Glencrest Res., LLC*, No. 3:10-CV-1573-B, 2011 WL 5118465, at *2 (N.D. Tex. Oct. 26, 2011) (citing *Brown v. Ogbolu*, 331 S.W.3d 530, 535 (Tex. App.—Dallas 2011, no pet.)). To defeat summary judgment, EH must raise a genuine issue of material fact as to at least one of these elements. *Id.*

The parties do not dispute that the confirmed chapter 11 bankruptcy reorganization plan constituted a valid contract. In its original Petition, and again in its motion for summary judgment, New Hope states that a "valid contract exists between Plaintiff and Defendant in the form of a confirmed Chapter 11 Plan of Reorganization." Doc. 1-3, Pl.'s Pet. ¶ 3.02; Doc. 29, Corr. Br. Supp. Pl.'s Mot. Summ. J. 9. Likewise, in its Answer, EH admits that "the confirmed Chapter 11 Plan of Reorganization, incorporating and modifying the provisions of the underlying loan agreements, constituted a valid contract." Doc. 4, Def.'s Answer ¶ 19. To be sure, a confirmed chapter 11 reorganization plan "functions as a contract in its own right." *In re Coho Energy, Inc.*, 309 B.R. 217, 219 (Bankr. N.D. Tex. 2004) (citing *In re U.S. Brass Corp.*, 301 F.3d 296, 307 (5th Cir. 2002)). The plan in this case specifically incorporated the underlying loan documents to the extent that they were not modified by the terms of the plan, stating "The Class 5 Claim shall retain all of its liens and security interests as originally provided in its loan documents until paid off. The Bank Note, Deed

- 10 -

of Trust and other collateral documents shall remain fully enforceable except as modified by the terms of the plan." Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 3, at 41–42.

The parties also do not appear to dispute that New Hope tendered performance in accordance with the contract. New Hope's summary judgment evidence includes a loan closing statement indicating that $5,632,413.72 was paid to EH (Doc. 30, App. Supp. Pl.'s Br. Supp. Mot. Summ. J., Ex. A-3), and, although EH argues New Hope was not entitled to an early pay-off in January 2015, in its response to New Hope's motion for summary judgment, EH acknowledges acceptance of that amount in satisfaction of its claims and that "in exchange for this payment, [EH] released its lien on the Property." Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶ 24.

Where the parties diverge is on the element of breach, specifically whether EH's demand for and acceptance of $5,632,413.72 in exchange for the release of its lien—which New Hope contends included an overpayment of $407,868.56—constituted a breach of the contract. The Court applies the normal rules of contract interpretation to the interpretation of a plan of reorganization. *Matter of Tex. Gen. Petroleum Corp.*, 52 F.3d 1330, 1335–36 (5th Cir. 1995). The determination of whether a contract is ambiguous is a legal question for the Court. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 199 (5th Cir. 1992). Unambiguous contracts are interpreted as a matter of law. *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002). Underlying the question of whether the contract was breached is primarily a single issue: the effect of EH's 11 U.S.C. § 1111(b) election on the parties' pay-off calculations.

1.  11 U.S.C. § 1111(b)

To understand the application of the so called "§1111(b) election," and why a creditor might choose to pursue it, it is necessary to first understand the usual treatment of a creditor's claim in a

chapter 11 bankruptcy reorganization. Usually, a secured creditor's claim is subject to bifurcation pursuant to 11 U.S.C. § 506(a), which provides, in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). Thus, an undersecured creditor—one who is owed more than the value of the collateral securing the debt—normally holds (1) an allowed secured claim equal to the court-determined value of the collateral securing the claim, and (2) an unsecured claim for the balance of the debt. *See* 7 Collier on Bankruptcy ¶ 1111.03[1][a][ii][A] (16th ed.) [hereinafter Collier]; *see also Matter of DRW Prop. Co. 82*, 57 B.R. 987, 991 n.3 (Bankr. N.D. Tex. 1986).

Subject to certain exceptions not applicable in the present case, in general terms, § 1111(b) allows an undersecured creditor the option to have its collateral secure its entire claim even though the collateral is actually worth less than the creditor's total claim. Paul L. Gaughen, Annotation, *Election, Under § 1111(b) of Bankruptcy Code of 1978 (11 U.S.C.A. § 1111(b)), of Treatment of Undersecured Claim*, 142 A.L.R. Fed. 573 (1997). Specifically, § 1111(b) states, in relevant part, that "[i]f such an election is made, then notwithstanding section 506(a) of this title, such claim is a *secured* claim to the extent that such claim is allowed." 11 U.S.C. § 1111(b)(2) (emphasis added). By making the election, the undersecured creditor gives up any right to a deficiency claim he might have had for the unsecured portion of the debt—that is, the difference between the value of the collateral and the total debt—but gains a "secured claim" for the total amount of the indebtedness, not just for the value of the property. *See In re Greystone III Joint Venture*, 995 F.2d 1274, 1279–80 (5th Cir. 1991); *see also Matter of DRW*, 57 B.R. at 992. The purpose of this election is to provide

- 12 -

the partially secured creditor with additional protection when it believes that the collateral is undervalued pursuant to § 506(a). Collier ¶ 1111.03[4].

The true effect of the election, however, is not readily apparent without reference to 11 U.S.C. § 1129(b)(2)(A)(i)(II), which explains that for a chapter 11 plan to be confirmed by the bankruptcy court, it must provide those holding "secured claims" with "deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." 11 U.S.C. § 1129(b)(2)(A)(i)(II). Therein lies the importance of § 1111(b)(2)'s classification of the elector's claim as "secured" to the full extent of the claim.

In this case, there is no dispute that a valid § 1111(b) election was timely filed with the bankruptcy court prior to plan confirmation. New Hope acknowledged in its original Petition that "[o]n January 4, 2013 EH National Bank made its Election of Secured Creditor Pursuant to 11 U.S.C. Section 1111(b)" (Doc. 1-3, Pl.'s Pet. ¶ 2.04), and later even submitted a copy of EH's election with its summary judgment evidence. Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 4. The evidence also shows that from the time of First Plan of Reorganization dated December 11, 2012 (*Id.* at Ex. 2), to the time of the First Amended Plan dated January 11, 2013 (*Id.* at Ex. 3), almost four pages were added to the twenty-one page plan addressing the significance of the § 1111(b) election, including several examples highlighting the effect of pursuing, or not pursuing, a § 1111(b) election. *Id.* at Ex. 3, 42–45.

2.     The Plan

The proposed (and later confirmed) plan, as modified by the Second Modification, describes in some detail the calculation of the payments necessary for the plan to meet the confirmation

requirements of § 1129(b)(2)(A)(i)(II), given the effect of the § 1111(b) election.[12] The Second

Modification provides, in relevant part, as follows:

> EH National Bank shall be paid based on an Allowed Secured Claim of $5,168,829.55 (the "Allowed Secured Claim") and shall be paid in full over ten (10) years with the Allowed Secured Claim amount amortized over thirty (30) years with interest on such amount at the fixed rate of 4.85% per annum and a final balloon payment of $4,202,214.35 at the end of the (10) year term.
>
> The updated Section 1111(b) calculation as relevant to the treatment of EH National Bank can be summarized as follows:

| | |
|---|---|
| Total Claim Amount of EH National Bank | $5,770,054.96 |
| Value of the collateral | $5,500,000.00 |
| Total amount of priming ad valorem tax liens | $331,170.45 |
| Allowed Secured Claim of EH National Bank | $5,168,829.55 |

> The modified Plan proposes to pay the Allowed Secured Claim at the rate of $27,275.49 a month based on a 30 year amortization and a 4.85% annual percentage rate for 120 months. Assuming that this period and rate are approved by the Court under 11 U.S.C. Section 1129, the total paid to EH National Bank over the next 120 months is projected to be $3,273,058.80. The balloon payment on the Allowed Secured Claim amount in 120 months will be $4,202,214.35.
>
> Under the Section 1111(b) election, the total payments paid out are $3,273,058.80. Such amount is then subtracted from the Total Claim Amount of $5,770,054.96 leaving an unpaid balance in 120 months of $2,496,996.16. By comparing this amount with the amount remaining on the Allowed Secured Claim the balloon payment in ten years is $4,202,214.35.

Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 7. Thus, consistent with the

requirements of § 1129 that EH receive "deferred cash payments totaling at least the allowed amount

of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's

---

[12]The Second Modification to the plan on March 13, 2013 only changes the value of EH's allowed secured claim based on the bankruptcy court's valuation of the collateral at $5,500,000.00, which had been valued at $4,250,000.00 in previous versions of the plan. Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 7, at 125. For all other purposes, the terms of the First Amended Plan of Reorganization dated January 11, 2013 (*Id.* at Ex. 3) control.

interest in the estate's interest in such property," over the course of ten years the plan would provide EH with payments—consisting of both principal and interest portions—with a present value as of the date of plan confirmation equal to EH's allowed secured claim of $5,168,829.55, but that also totaled at least $5,770,054.96 not considering present value.

### 3.   New Hope's Pay-off Calculation

After making twenty monthly payments of $27,279.49—for a total of $545,509.80 in payments—New Hope calculated what it believed was a payoff amount consistent with the plan and the § 1111(b) election. By New Hope's calculation, EH was entitled to receive the greater of the following: (1) the principal balance remaining on the allowed secured claim per the amortization schedule after the twenty payments New Hope had already made (or $5,036,109.51)[13]; or (2) the difference between EH's total claim and the total payments made under the plan (or $5,224,545.16).[14] Doc. 29, Pl.'s Corr. Br. Supp. Mot. Summ. J. ¶ 13. The greater of these two sums obviously being the latter, New Hope argues that in January 2015 EH was entitled to a pay-off amount $5,224,545.16 to satisfy its claims under the plan. *Id.*

New Hope appears to base its "greater of the two" calculation on the language of the Second Modification subtracting the total payments made after ten years from EH's total claim amount,[15]

---

[13]When the "allowed secured claim" of $5,168,829.55 is amortized over 30 years at 4.85% per year, as described by the plan, after twenty payments of $27,275.49, the remaining principal balance on the allowed secured claim is $5,036,109.51. Therefore, of the $545,509.80 in total payments made, only $132,720.04 went to principal reduction on the allowed secured claim ($5,168,829.55 – $132,720.04 = $5,036,109.51).

[14]EH's total claim of $5,5770,054.96 minus the total of payments made under the plan ($27,725.49 x 20 monthly payments = $545,509.80) equals $5,224,545.16.

[15]$5,770,054.96 – $3,273,058.80 = $2,496,996.16. The total payments after ten years of $3,273,058.80 comes from multiplying the monthly payments of $27,275.49 by 120 months, or ten years'

then "comparing" that amount with the balloon payment provided in the plan and determining that the amount due after the ten years' worth of payments would be the balloon payment amount. *See* Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 7. Thus, New Hope extrapolates the calculation used to achieve plan confirmation to an early pay-off twenty payments into the plan.[16]

4.     EH's Pay-off Calculation

EH, on the other hand, demanded and accepted a pay-off of $5,632,413.72 to release its lien on the collateral. Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶¶ 20–24. EH maintains that the plan required the $601,225.41 difference between the total claim amount of $5,770,054.96 and the allowed secured claim amount of $5,168,829.55 to be added back to the outstanding principal amount on the allowed secured claim. Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶ 23.[17] EH makes

---

worth of payments.

[16]While New Hope compares (1) the outstanding principal owed on the allowed secured claim after twenty payments—$5,036,109.51—with (2) the difference between the total claim and the total payments made—$5,224,545.16—to find that EH is owed the greater amount, this comparison is not totally congruent with the "comparison" contemplated by the plan after 120 payments. The reason being, the plan does not compare the outstanding principal amount remaining on the allowed secured claim after 120 payments to the difference between the total claim and the total payments made at that point. Rather, it compares (1) the balloon payment due after 120 payments with (2) the difference between the total claim and the total payments made to that point. The balloon payment of $4,202,214.35 contemplated by the plan after 120 payments naturally includes the principal remaining on the allowed secured claim as well as an additional month's interest. Otherwise, the balloon payment would only be $4,185,298.77 (*i.e.*, the principal amount remaining on the allowed secured claim after 120 monthly payments of $27,275.49), not $4,202,214.35. New Hope neglects to include the additional month of interest that would accompany a 21st "balloon" pay-off in its comparison. Thus, New Hope's comparison should actually have been between (1) a balloon payment of $5,056,463.80 (which includes both the outstanding principal on the allowed secured claim of $5,036,109.52 plus an additional month's interest) and (2) the difference between the total claim amount of $5,770,054.96 and the total payments made to that point of $545,509.80—or $5,224,545.16. Either way, of course, $5,224,545.16 is still the greater of the two numbers.

[17]The outstanding principal amount on the allowed secured claim after the twenty payments, as noted above, was $5,036,109.52. The difference between EH's total claim ($5,770,054.96) and the allowed secured claim ($5,168,829.55) was $601,225.41. When the deficiency amount of $601,225.41 is added back to the outstanding principal amount of $5,036,109.52, it equals $5,637,334.96. EH notes that due to the receipt

several arguments in favor of its pay-off calculation, all of which revolve around its contention that the interest portion of the monthly payments under the plan should not also be allowed to double as "principal reduction" on the total claim of $5,770,054.96. *Id.* ¶ 27.

i.      *In re 680 Fifth Avenue Associates*

Noting in its brief that the application of plan payments subject to a § 1111(b) election has not been the subject of many decisions, EH relies heavily on a case out of the Second Circuit to support its pay-off calculation. Doc. 39, Def.'s Corr. Br. Supp. Resp. to Pl.'s Mot. Summ. J. 4. In *In re 680 Fifth Avenue Associates*, the bankruptcy court stated that "the debtor must pay the secured creditor either the value of its secured claim in full, i.e., the value of the collateral, or the value of its true secured claim over time with interest so that the stream of payments has a present value equal to the value of the true secured claim at confirmation, *plus* an amount equal to the unsecured portion of the debt as valued at confirmation without regard to present value." 156 B.R. 726, 733 (Bankr. S.D.N.Y. 1993) (emphass added). It is the inclusion of the word "plus" from which EH apparently concludes that the $601,225.41 deficiency must be added back to the remaining principal balance on the allowed secured claim to arrive at a pay-off balance. EH argues that not only was *680 Fifth Ave.* eventually affirmed by the district court (169 B.R. 22 (S.D.N.Y. 1993)) and the Second Circuit (29 F.3d 95 (2d Cir. 1994)), but also that the case was specifically cited in the confirmed plan, which of course was drafted by New Hope for the bankruptcy court's approval. Doc. 39, Def.'s

---

of an additional payment from New Hope—apparently in addition to the twenty monthly payments of $27,275.49 but obviously only amounting to $4,921.24—EH reduced its pay-off calculation to $5,632,413.72, which the parties both agree New Hope ultimately paid. Doc. 19, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶ 23. The Court finds no indication in the record of when or why this additional payment of $4,921.24 was made, however, it is not relevant to the resolution of the case.

Corr. Br. Supp. Resp. to Pl.'s Mot. Summ. J. 4–7. For this reason, EH also argues that the doctrine of *contra proferentem* dictates that the plan be construed against New Hope, the drafter. Doc. 34, Br. Supp. Def.'s Mot. Summ. J. ¶ 6.

The Court, however, is not persuaded by EH's reliance on *680 Fifth Ave.* for several reasons. First, although EH describes *680 Fifth Ave.* as the "best authority" on "how to apply payments once the [§ 1111(b)] Election is made" (Doc. 39, Br. Supp. Def.'s Resp. to Pl.'s Mot. Summ. J. 6), the holding in *680 Fifth Ave.* was limited to the question of whether a nonrecourse lien arising by operation of law rather than by contract entitles the creditor to elect § 1111(b) treatment. *In re 680 Fifth Ave. Assocs.*, 156 B.R. 726, 734–36 (Bankr. S.D.N.Y. 1993) ("Given Congress' intent to broadly define "claim" and the plain meaning of § 1111(b), we find that [secured creditor's] nonrecourse lien on property of the debtor entitles it to the benefits of § 1111(b), regardless of whether the lien arose by operation of law or by consent."). The application of plan payments pursuant to a § 1111(b) election, and in accordance with § 1129(b)(2)(A)(i)(II), was not specifically at issue in that case.

Second, although *680 Fifth Ave.* has not directly been addressed by the Fifth Circuit, other courts have recognized that *680 Fifth Ave.* does not actually stand for the proposition that a deficiency amount is added back to the allowed secured claim. In a case where a creditor argued it was entitled to a lump sum payment equal to the unsecured portion of its total claim at the end of a chapter 11 plan, the U.S. Bankruptcy Appellate Panel for the Ninth Circuit noted that the creditor's reliance on the "plus" language of *680 Fifth Ave.* was "misplaced." *In re Weinstein*, 227 B.R. 284, 295 (B.A.P. 9th Cir. 1998) ("While ambiguously drafted, the quoted language is more accurately read as merely requiring the electing creditor receive its 'true' secured claim, i.e., the value

of its collateral, in full at the time of plan confirmation or in deferred payments with interest so that the present value of the secured claim is provided. The electing creditor should also receive payments on the unsecured portion of its claim without interest, if necessary, so that, at a minimum, the total payments received is equal the creditor's total claim. This is the interpretation of the § 1111(b)(2) election found in other portions of the *680 Fifth Ave. Assocs.* opinion."). Furthermore, the Court has not found, nor has EH identified, any authority besides *680 Fifth Ave.* supporting the theory that the deficiency portion of the total claim is added back to the balloon payment in a chapter 11 plan.

Additionally, several district courts addressing the issue have agreed that the interest payments on the allowed secured claim do, in fact, also function as principal reductions on the total claim. *See Matter of IPC Atlanta Ltd. P'ship*, 163 B.R. 396, 399–400 (Bankr. N.D. Ga. 1994); *In re Bloomingdale Partners*, 155 B.R. 961, 974 (Bankr. N.D. Ill. 1993) ("the same payments under the plan must satisfy two requirements: (1) the simple, arithmetic total of the stream of payments must at least equal the total claim, and (2) those payments must have a present value equal to the value of the collateral"). And while the Fifth Circuit may not have directly addressed the "double-duty of interest payments" question, in explaining the application of § 1129(b)(1)(A)(i)(II), it has never mentioned adding the deficiency back to the allowed secured claim. *See, e.g.*, *In re Tex. Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 330 (5th Cir. 2013) (describing § 1129(b) as requiring "deferred payments of a 'value' at least equal to the 'allowed amount' of the secured claim as of the effective date of the plan. In other words, deferred payments, discounted to present value by applying an appropriate interest rate . . ., must equal the allowed amount of the secured creditor's claim.") (footnotes omitted).

Although EH cites several cases in its briefing as having approved of *680 Fifth Ave.* (Doc. 39 Corr. Br. Supp. Def.'s Resp. to Pl.'s Mot. Summ. J. 4–5, n.3 and 4), none of the cases cited appear to endorse the "plus" language of *680 Fifth Ave.*, but rather cite to the case more generally as a case dealing with a § 1111(b) election. *See, e.g., Wade v. Bradford*, 39 F.3d 1129, 1129 (10th Cir. 1994) (citing to *680 Fifth Ave.*, but merely for the idea that treatment under § 1111(b)(2) "means that the creditor relinquishes his right to vote on the plan and to share in the distribution to unsecured creditors, but that the creditor must be paid the full amount of his claim over time, so long as the present value of such payments equals the value of the collateral").

Even assuming that *680 Fifth Ave.* did stand for the proposition that the interest portion of payments made under the plan do not also serve to reduce the total claim, the only reference to *680 Fifth Ave.* in the confirmed plan *sub judice* comes immediately following a sentence explaining that, in lieu of the deferred cash payments described in § 1129(b)(2)(A)(i)(II), the plan may also provide for the realization of the "indubitable equivalent" of the secured creditor's claim. *See* Doc. 45, App. Supp. Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 3, at 44; 11 U.S.C. § 1129(b)(2)(A)(iii). The "indubitable equivalent" language from § 1129(b)(2)(A)(iii) is commonly understood to provide an alternative to the deferred cash payments described in § 1129(b)(2)(A)(i)(II). *See, e.g., In re Pac. Lumber Co.*, 584 F.3d 229, 245 (5th Cir. 2009); *see also Matter of Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1350 (5th Cir. 1989) (noting that a plan which transferred the collateral itself to the secured creditor satisfied the "indubitable equivalent" requirement). Such alternative is, of course, not applicable in the present case, as the confirmed plan provided for deferred cash payments. Therefore, although EH argues that *680 Fifth Ave.* should guide the Court's interpretation of the plan's

repayment calculations, the only reference to *680 Fifth. Ave.* in the plan has nothing to do with the plan payments at all, but instead describes an alternative to such payments in an appropriate case.

As for EH's *contra proferentem* argument, this principle of contract interpretation is only applicable when the language of a contract is ambiguous, which the Court does not find in this case. *See Liszt v. Karen Kane, Inc.*, No. 3:97-CV-3200-L, 2001 WL 739076, at *9 (N.D. Tex. June 26, 2001) (citing *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1206–07 (5th Cir. 1991). Thus, the Court does not find the language of *680 Fifth Ave.* controlling with regard to the application of plan payments pursuant to the § 1111(b) election.

While neither the plan nor the cases directly address the present situation—that is, the pay-off of a confirmed chapter 11 plan before its natural termination—given the interpretation of the majority of courts to consider the effect of a § 1111(b) election, the Court finds that the unambiguous language of the plan entitled EH to payments totaling $5,770,054.96, but with a present value equaling $5,168,829.55, the value of the collateral (minus the outstanding ad valorem tax liens) as of the date of plan confirmation. Having made twenty payments totaling $545,509.80—$132,720.04 of which went to reduce the principal on the  allowed secured claim of $5,168,829.55, and all of which counted toward the total claim of $5,770,054.96—any pay-off amount in January 2015 must have been at least $5,224,545.16 to comport with the plan. Based on the amortization of the allowed secured claim of $5,168,829.55 at 4.85% over thirty years, a balloon payment in January 2015 of $5,056,463.80 was required to provide EH with the equivalent of its allowed secured claim discounted to the present value as of the date of plan confirmation. The $5,224,545.16 figure obviously being the larger of the two, as a matter of law, EH was entitled to receive $5,224,545.16 from New Hope in January 2015 in satisfaction of New Hope's obligations

under the confirmed chapter 11 bankruptcy reorganization plan, as modified by the Second Modification and incorporating the underlying loan documents to the extent that their terms were not modified by the plan. EH's demand for an amount greater than $5,224,545.16 in order for it to release its lien on the property constitutes a breach of the plan, and thus, New Hope was damaged in the amount of the $407,868.56 overpayment. As EH has not raised a genuine issue of material fact with regard to the breach of contract claim, summary judgment is **GRANTED** for New Hope.

B.      *New Hope's Money Had and Received Claim*

In its original Petition, New Hope alleged that EH "has wrongfully retained monies that rightfully belong to [New Hope]," and that EH "should return the monies it has wrongfully received." Doc. 1-3, Pl.'s Pet. ¶¶ 4.02–.03.

A claim for money had and received is an equitable claim that is based on the justice of the case rather than on wrongdoing. *BAC Home Loans Servicing, LP v. Tex. Realty Holdings, LLC*, 901 F. Supp. 2d 884, 914 (S.D. Tex. 2012) (citing *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007)). It "may be maintained to prevent unjust enrichment when one person obtains money which in equity and good conscience belongs to another." *Id.* (quoting *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.)). As a general rule, a party cannot pursue equitable theories of recovery when an express contract governs the dispute. *Aldous v. Darwin Nat'l Assurance Co.*, No. 3:13-CV-3310-L, 2015 WL 1879677, at *5 (N.D. Tex. Apr. 24, 2015). However, an exception to this rule includes overpayments under a contract. *Id.* (citing *Fortune Prods. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 471 (Tex. 2000); *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna*

*Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015); *Courson Family Land P'ship Ltd. v. Latigo Petroleum Tex., LP*, No. 2:06-CV-00009, 2006 WL 3044415, at *3 (N.D. Tex. Oct. 26, 2006)).

In its brief in support of its motion for summary judgment, New Hope contends that EH "received additional hundreds of thousands of dollars that it was not due under the Plan agreed to between Plaintiff and Defendant," that EH "is required to return the monies it wrongfully received and has kept," and "prays for Defendant to return the amount of the overpayment it received." Doc. 29, Pl.'s Br. Supp. Mot. Summ. J. 9.

For the reasons stated above, and based on the evidence of record, the Court finds that EH was overpaid in the amount of $407,868.56, and that this overpayment rightfully belongs to New Hope. Accordingly, summary judgment is **GRANTED** for New Hope on its money had and received claim.

C.     *The Parties' Claims for Declaratory Relief*

In its original Petition, New Hope requested that the "Court declare the rights of the parties under the Plan including the amount due to Defendant." Doc. 1-3, Pl.'s Pet. ¶ 5.03. EH counterclaimed for declaratory relief, asking the Court to interpret "the relevant agreements, pleadings, orders and statutes including, without limitation, the Plan as confirmed, the loan agreements, 11 U.S.C. § 1111(b) and Defendants election thereunder" and declare "the rights of the parties in connection therewith." Doc. 4, Def.'s Answer ¶ 38. Specifically, EH maintained that it was entitled to a "declaration . . . that [New Hope] was not technically entitled—absent consent by [EH]—to an early payoff of the note (as modified by the Plan), that the pay-off amount that [New Hope] came up with was incorrect, that the amount paid by [New Hope] in exchanged [sic] for

[EH]'s release of its liens was the correct amount, and that [New Hope] is not entitled to any further payment from [EH]." *Id.*

Subsequently, New Hope moved for summary judgment on its claim for declaratory relief, again requesting that the "Court declare the rights of the parties under the Plan including the amount due to [EH]." Doc. 29, Pl.'s Br. Supp. Mot. Summ. J. 9–10. EH cross-claimed for summary judgment on its counterclaim for declaratory relief, praying "for declaratory relief that, as a matter of law . . . it owes nothing to [New Hope], that it is entitled to retain the monies paid . . . by [New Hope] . . ., and that [New Hope] is liable to [EH] for reasonable attorney's fees . . . under the Notes and under Texas law . . . ." Doc. 33, Def.'s Mot. Summ. J. ¶ 19.

Federal district courts cannot award relief pursuant to the Texas Declaratory Judgment Act because declaratory judgment is procedural, not substantive, and federal courts apply their own procedural rules. *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 591 (N.D. Tex. 2013). Because this action was removed from state court, the requests for declaratory relief "may be construed as one brought under the federal Declaratory Judgment Act." *Id.* (quoting *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 769 (N.D. Tex. 2012)). The federal Declaratory Judgment Act allows a federal court to declare the rights of interested parties. 28 U.S.C. §§ 2201–2202. It gives federal courts broad discretion to grant or refuse declaratory judgment. *Wells v. Bank of Am., N.A.*, No. 3:13-CV-3658-M, 2015 WL 4269089, at *8 (N.D. Tex. July 14, 2015).

Here, New Hope requests a declaration of the amount it owed EH under the plan. For the reasons stated above, and based on the evidence of record, the Court finds that EH was owed $5,224,545.16 as a pay-off in January 2015 according to the plan. Accordingly, summary judgment

is **GRANTED** for New Hope on its claim for declaratory judgment. For the reasons stated above,

EH's request for summary judgment on its claim for declaratory relief is **DENIED**.

## IV.

## CONCLUSION

For the reasons stated above, New Hope's motion for summary judgment on all of its claims

is **GRANTED**, and EH's motion for summary judgment on its counterclaim for declaratory relief is

**DENIED**.

SO ORDERED.

SIGNED: September 29, 2016.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE